## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HAROLD KING, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. |
| v. | ) ) | **CLASS ACTION COMPLAINT FOR** |
| BAZAARVOICE, INC., THOMAS J. MEREDITH, GENE AUSTIN, CRAIG A. BARBAROSH, KRISTA BERRY, STEVE H. BERKOWITZ, JEFFREY HAWN, and ALLISON M. WING, | ) ) ) ) ) ) | **VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

Plaintiff Harold King ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Bazaarvoice, Inc. ("Bazaarvoice" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Bazaarvoice, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Merger") between Bazaarvoice and certain affiliates of Marlin Equity Partners ("Marlin").

2.      On November 26, 2017, the Board caused the Company to enter into an agreement and plan of merger (the "Original Merger Agreement"), pursuant to which the Company's

shareholders stand to receive $5.50 in cash and stock for each share of Bazaarvoice stock they own (the "Merger Consideration"), for a total value of approximately $521 million.  The Original Merger Agreement was subsequently amended on December 14, 2017 ("Merger Agreement").

3.      On December 26, 2017, in order to convince Bazaarvoice shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading definitive proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.  The materially incomplete and misleading Proxy independently violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act.

4.      While touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially incomplete and misleading.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning the financial projections for the Company that were prepared by the Company and relied upon by the Board in recommending the Company's shareholders vote in favor of the Proposed Merger.  The financial projections were also utilized by Bazaarvoice's financial advisor, GCA Advisors, LLC ("GCA Advisors"), in conducting the valuation analyses in support of its fairness opinion.

6.     It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the forthcoming stockholder vote to allow the Company's stockholders to make an informed decision regarding the Proposed Merger.

7.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to Bazaarvoice shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Bazaarvoice is incorporated in this District.

## PARTIES

11.     Plaintiff is, and at all relevant times has been, a holder of Bazaarvoice common stock.

12.     Defendant Bazaarvoice is incorporated in Delaware and maintains its principal executive offices at 10901 Stonelake Boulevard, Austin, Texas 78759.  The Company's common stock trades on the NASDAQ under the ticker symbol "BV".

13.     Individual Defendant Thomas J. Meredith has served as Chairman of the Board since August 2011 and as a director of the Company since August 2010.

14.     Individual Defendant Gene Austin has served as Chief Executive Officer since February 2014, and as a director of the Company since November 2013.

15.     Individual Defendant Craig A. Barbarosh has served as a director of the Company since September 2017.

16.     Individual Defendant Krista Berry has served as a director of the Company since April 2017.

17.     Individual Defendant Steve H. Berkowitz has served as a director of the Company since October 2015.

18.     Individual Defendant Jeffrey Hawn has served as a director of the Company since April 2015.

19.     Individual Defendant Allison M. Wing has served as a director of the Company since April 2017.

20.     The Individual Defendants referred to in paragraphs 13-19 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Bazaarvoice (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

22.     This action is properly maintainable as a class action because:

a.      The Class is so numerous that joinder of all members is impracticable.  As of December 21, 2017, there were approximately 86,200,470 shares of Bazaarvoice common stock outstanding, held by hundreds of individuals and entities scattered throughout the country.  The actual number of public shareholders of Bazaarvoice will be ascertained through discovery;

b.      There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)      whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii)     whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

iii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I.     The Proposed Merger

23.     Bazaarvoice develops software solutions for the retail, manufacturing, finance, pharmaceutical, travel, and media industries.  The Company's software captures, displays, and analyzes online word of mouth, including consumer-generated ratings and reviews, questions and answers, recommendations, photographs, and other content about its clients' brands, products and services.  Founded in 2005, Bazaarvoice has offices across North America and Europe.

24.     On November 27, 2017, Bazaarvoice issued a press release announcing the Proposed Merger, which states in pertinent part:

> AUSTIN, Texas, Nov. 27, 2017 (GLOBE NEWSWIRE) -- Bazaarvoice, Inc. (Nasdaq:BV), a provider of consumer-generated content (CGC), advertising, and personalization solutions, today announced that it has entered into a definitive agreement to be acquired by entities affiliated with the global investment firm, Marlin Equity Partners.
>
> Under the terms of the agreement, Marlin will acquire each share of outstanding common stock of Bazaarvoice in exchange for $5.50 in cash for a total value of approximately $521 million.  This price represents an 18% premium to the average closing price of Bazaarvoice common stock for the 30-calendar day period ending November 24, 2017. Upon completion of the transaction, Bazaarvoice will become a privately-held company.
>
> "The Board of Directors appreciates the patience that our stockholders have shown as we've worked to improve our business and operations," said Tom Meredith, chairman of the board.  "The Board ultimately decided, after extensive engagement with stockholders and an extended and thorough process, that Marlin's offer to acquire Bazaarvoice is the best way to maximize value for our stockholders."
>
> "We are pleased to announce this transaction which enables our stockholders to realize immediate cash value at a premium and provides Bazaarvoice with the operational flexibility it needs to continue its strategic vision," said Gene Austin, Bazaarvoice's chief executive officer and president.
>
> "This transaction represents a unique opportunity to invest in a leading provider of consumer generated content applications and data offerings," said Nathan Pingelton, a principal at Marlin. "We are excited to partner with the entire Bazaarvoice team to build upon the company's success and support their long-term objectives of continued revenue growth and product innovation."

25.     The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth.  More specifically, since reporting positive EBITDA in 2016, the Company has reported quarterly EBITDA growth rates in the double-digits and triple-digits.  Moreover, the Company, for the first two quarters of its 2017 fiscal year, reported earnings per share that exceeded market estimates.

26.     In sum, it appears that Bazaarvoice is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders.   It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

## II.     The Materially Incomplete and Misleading Proxy

27.     On December 26, 2017, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *Financial Projections that Violate Regulation G and SEC Rule 14a-9*

28.     The Proxy discloses two sets of financial projections, the July Management Projections and the October Management Projections, for the Company on pages 52-54 of the Proxy.   However, the Proxy fails to provide material information concerning the Company's

financial projections, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger. Proxy 42.

29.     Specifically, the Proxy provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Adjusted EBITDA, (2) Free Cash Flow, and (3) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate these non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy 54.

30.     First, the Proxy defines Adjusted EBITDA as "GAAP net loss adjusted for stock-based expense, contingent consideration related to acquisitions, depreciation and amortization (including amortization of capitalized internal-use software development costs), restructuring charges, out of period sales tax refunds, integration and other costs related to acquisitions, other non-business costs and benefits, income tax expense and other (income) expense, net." Proxy 53. However, the Proxy fails to provide the values of any of these line items, and fails to reconcile Adjusted EBITDA to its most comparable GAAP equivalent. Proxy 53.

31.     Second, the Proxy defines Free Cash Flow as "Adjusted EBITDA adjusted for an amount equal to the Company's projected estimate of aggregate increases in net working capital, cash taxes, capitalized internal use software and increases in property, plant and equipment." Proxy 53. However, the Proxy also fails to provide the value of any of these line items, and fails to reconcile Free Cash Flow to its most comparable GAAP equivalent. Proxy 53. The failure of the Company to reconcile Adjusted EBITDA, as explained above, makes it impossible for shareholders to reconcile Free Cash Flow as well.

32.     Third, the Proxy discloses that "management prepared an adjusted calculation of unlevered free cash flow that was derived by subtracting separate estimated projected amounts for

increases in net working capital, cash taxes, capitalized internal use software and increases in property, plant and equipment rather than an aggregate estimated projected amount." Proxy 54. Despite disclosing that the Board relied upon unlevered free cash flows ("UFCF"), which were prepared by the Company using "separate estimated projected amounts" for several key line items, the Proxy fails to disclose those line items or reconcile UFCF to its most comparable GAAP equivalent measure.

33.     When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

34.     Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders. Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Bazaarvoice included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or

greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

35.     The SEC has repeatedly emphasized that disclosure of non-GAAP forecasts can be inherently misleading, and has therefore heightened its scrutiny of the use of such forecasts.[2] Indeed, the SEC's Division of Corporation Finance released a new and updated Compliance and Disclosure Interpretation ("C&DIs") on the use of non-GAAP financial measures to clarify the extremely narrow and limited circumstances, known as the business combination exemption, where Regulation G would not apply.[3]

36.     More importantly, the C&DI clarifies when the business combination exemption does not apply:

There is an exemption from Regulation G and Item 10(e) of Regulation S-K for non-GAAP financial measures disclosed in communications subject to Securities Act Rule 425 and Exchange Act Rules 14a-12 and 14d-2(b)(2); it is also intended to apply to communications subject to Exchange Act Rule 14d-9(a)(2). This exemption does not extend beyond such communications. Consequently, if the same non-GAAP financial measure that was included in a communication filed under one of those rules is also disclosed in a Securities Act registration statement, proxy statement, or tender offer statement, this exemption from Regulation G and

---

[1]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html. (emphasis added)

[2]     *See, e.g*., Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[3]     *Non-GAAP Financial Measures*, U.S. Securities and Exchange Commission (Oct. 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm#101. To be sure, there are other situations where Regulation G would not apply but are not applicable here.

Item 10(e) of Regulation S-K would not be available for that non-GAAP financial measure.

*Id.*

37.     Thus, the C&DI makes clear that the so-called "business combination" exemption from the Regulation G non-GAAP to GAAP reconciliation requirement applies solely to the extent that a third-party such as financial banker has utilized projected non-GAAP financial measures to render a report or opinion to the Board.  To the extent the Board also examined and relied on internal financial forecasts to recommend a transaction, Regulation G applies.

38.     Because the Proxy explicitly discloses that the forecasts were prepared by management and provided to the Board "in connection with the comprehensive strategic and financial review process," Proxy, 52, no exemption from Regulation G is applicable.

39.     Thus, to bring the Proxy into compliance with Regulation G as well as cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information on page 114, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.  At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such forecasts are necessary to make the non-GAAP forecasts included in the Proxy not misleading.

40.     At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such forecasts are necessary to make the non-GAAP forecasts included in the Proxy not misleading.  Indeed, the Defendants acknowledge the misleading nature of non-GAAP forecasts as stockholders are cautioned: "These financial measures are not meant to be considered in isolation or as a substitute for the comparable GAAP measures . . . ."  Proxy 53.

41.     Clearly, shareholders would find this information material since the Board's unanimous recommendation that shareholders vote in favor the Proposed Merger was based, in part on the following:

- that the achievement of the Company's standalone plan has and would continue to require significant changes in the Company's business and personnel and the risks and uncertainties of the impacts of these changes on the Company's performance and its ability to achieve the plan;

- *Business and Financial Condition.* The Board of Directors considered the Company's historical and projected business, industry, markets, financial performance and condition and its prospects.

- *Management Projections.* The Board of Directors considered forecasts for the Company prepared by Company management, which reflect an application of various assumptions of the Company's senior management. The Board of Directors considered the inherent uncertainty of attaining management's forecasts, including those set forth in "—Management Projections," and that due to such uncertainty the Company's actual financial results in future periods could differ materially from management's forecasted results.

Proxy 40-42.

42.     In sum, the Proxy independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Merger from Bazaarvoice shareholders.

43.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the

Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

46.     As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

47.     The failure to reconcile the numerous non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

## COUNT II

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in proxy statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

50.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading."  17 C.F.R. § 244.100(b).

51.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial forecasts for the Company and Marlin.

52.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

53.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

54.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

55.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial forecasts.

56.     Bazaarvoice is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

57.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

58.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise

of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate

and irreparable injury that Defendants' actions threaten to inflict.

**COUNT III**

**(Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act)**

59.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

60.     The Individual Defendants acted as controlling persons of Bazaarvoice within the

meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

officers and/or directors of Bazaarvoice, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the incomplete and misleading statements contained in

the Proxy filed with the SEC, they had the power to influence and control and did influence and

control, directly or indirectly, the decision making of the Company, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and

misleading.

61.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

62.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing the Proxy.

63.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

64.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

66.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless

and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.     Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  December 28, 2017

OF COUNSEL:

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:  */s/ Michael Van Gorder*
Michael Van Gorder (#6214)
20 Montchanin Road, Suite 145
Wilmington, DE 19807
Tel.: (302) 482-3182
Email: mvangorder@faruqilaw.com

*Counsel for Plaintiff*